## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 08-26-J |
| | ) |
| | ) Judge Kim R. Gibson |
| RODNEY GREEN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Rodney Green is charged in an Indictment with one Count of possession of contraband in prison, in violation of Title 18 U.S.C. § 1791(a)(2) and (b)(3). Doc. No. 1.

This matter comes before the Court on Defendant's filing of the following twelve pretrial motions at Doc. No. 29 (hereinafter "Def.'s Motions"): 1) Motion to Dismiss the Indictment; 2) Motion for Notice of United States' Intention to Use Certain Evidence; 3) Motion for Government Agents and State and Local Enforcement Officers to Retain Rough Notes and Writings; 4) Motion to Disclose and Exclude Uncharged Misconduct Evidence; 5) Motion for Early Disclosure of Jencks Materials; 6) Motion for Additional Discovery; 7) Motion for Early Disclosure of Brady Material; 8) Motion To Suppress Statements and Evidence; 9) Motion to Seek Lesser Included Offense; 10) Motion for Bill of Particulars; 11) Motion to Exclude Evidence of Prior Convictions; and, 12) Motion to Inspect Contraband.

The government filed responses to each Motion at Doc. No. 36 (hereinafter"Govt.'s Resp."). Furthermore, on March 24, 2009, the Court held a hearing on Defendant's Motion to Suppress. *See* Hr'g Tr., Doc. No. 39. The Official Transcript of that Hearing was filed on April 24, 2009, and the Court allowed ten days following the filing of the transcript for filing of

additional arguments. *Id.* Consequently, Defendant's Motion to Suppress was ripe for adjudication on May 4, 2009. At the Suppression Hearing, the Court notified the parties that all motions would be adjudicated at the same time the Court issued a decision on the suppression issue. H'rg Tr., p. 26.

The Court will address each of Defendant's Motions in turn.

## I. Motion to Dismiss the Indictment

Mr. Green moves the Court to dismiss the Indictment pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. Def.'s Motions, pp. 2-3, ¶¶ 4-8. In summary, Defendant argues that the Indictment is so lacking in factual particulars as to be legally insufficient. *See id.* The government responds that this "argument is specious and should be denied." Govt.'s Resp., p. 2.

Third Circuit law addressing this question is fairly clear: "An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) (internal quotations and citations omitted). *Rankin* further explained that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.* (citing cases).

Defendant alleges that the "Indictment in this case merely tracks the language of the statute charged." Def.'s Motions. This allegation is not correct, because the Indictment does not simply

2

restate the statute in full. Instead, as allowed by law, the Indictment relies upon the statutory language in alleging the presence of each basic statutory element required for the commission of the offense, while also interweaving appropriate factual references. For instance, the Indictment references the following factual information: Defendant's name, the location of the offense, and the specific item ("a sharpened piece of metal approximately eight and one-half (8 ½) inches long"). Furthermore, upon analysis, the Indictment correctly alleges each element required for violation of 18 U.S.C. §§ 1791(a)(2) and (b)(3).

In addition to being technically correct, the Indictment also fairly informs Mr. Green of the charges against him. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed.2d 590 (1974). This Indictment sets clear boundaries on the charge, and would facilitate clarity as to the potential availability, at some point in the future, of arguments that an acquittal or conviction on this charge bars future prosecution for the same offense. *Id.* Consequently, Defendant's Motion to Dismiss Indictment has no merit, and is hereby DENIED.

## II. Motion for Notice of the Government's Intention to use Certain Evidence

Defendant next seeks an order directing the government "to indicate its intentions of the evidence expected to be offered against the Defendant." Def.'s Motions, pp. 3-5, ¶¶ 9-19. Defendant explains that while the government made numerous pages of documents available for inspection, it did not "identif[y] which documents it intends to introduce into evidence." *Id.* at 3, ¶ 10. Defendant further seeks notice of "statements made by any witnesses which the government may intend to introduce at trial which may be attributable to Defendant under Fed. R. Evid. 801(d)(1)." *Id.* at 12, ¶ 12. Additionally, the Motion seeks notice of Rule 404(b) materials. *Id.* at 4, ¶ 15. Furthermore, the Motion also makes other, sometimes indecipherable requests

3

regarding notice. *See, e.g.*, *id.* at 3, ¶ 13 ("Defendant seeks that the Government state its intention to use statements of any alleged witness insofar as those statements would have been made other than during the court of and in furtherance of the crime alleged."). Defendant concludes that "unless he is provided with this information, his ability to prepare for trial and to raise, by Motion in Limine, objections to the introduction of any particular document will be severely restricted." *Id.* at 5.

## A. Court Denies Defendant's General Request for Identification of Documents

Upon review, Defendant has not sufficiently established his right or need for the government to fully explicate its planned case at trial. In *United States v. Addonizio*, the Third Circuit explained that the government is not required "to weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." 451 F.2d 49, 64 (3d Cir. 1972). The Court assumes that the government has fully complied with its discovery obligations under Rule 16, and other applicable rules and statutes; should Defendant make a more specific request as to a particular area sought, the Court will consider such a more particularized request. However, only given Defendant's generalized request, the Court cannot find any reason to order the government to identify the specific documents, of those provided to the Defendant, upon which the government intends to rely at trial; therefore, Defendant's request is **DENIED.**

## B. Court Denies Defendant's Request for Rule 801(d)(1) Statements

The Court fails to understand nature of Defendant's request for statements "made by any witnesses which the Government may intend to introduce at trial which may be attributable to Defendant under Fed. R. Evid. 801(d)(1)." Def.'s Motions, p. 3, ¶ 12. Rule 801(d)(1) states:

**(d) Statements which are not hearsay.** A statement is not hearsay if--

4

> **(1) Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or . . ..

Fed. R. Evid. 801(d)(1).

As stated in the government's response, Rule 801(d)(1) relates to the admissibility of prior consistent and inconsistent statements by a testifying witness. Consequently, the Court does not understand Defendant's request regarding statements that "may be attributable to Defendant." As to generic notice of all prior statements made by potential government witnesses, Defendant has not stated any legal basis for this request; furthermore, as discussed *infra*, the Court does not have the authority, pursuant to the Jencks Act, to order such discovery. As the government correctly points out, determination of the admissibility of a witness's prior statement is typically properly made during the course of the testimony. Obviously, though, Rule 16(b) requires that the prosecution disclose the substance of certain oral statements of the defendant known to the prosecution; however, Defendant's request does not seem, on its face, targeted at such statements.

Defendant states that he "believes" that the government's failure to identify certain statements will result in "substantial prejudicial error." Def.'s Motions, p. 4, ¶ 14. However, in spite of Defendant's "belief", the Court cannot ascertain how such prejudice would accrue, or a legal theory that would allow the Court to preemptively protect against such unknown prejudice. Consequently, for all of the above reasons, Defendant's request regarding Rule 801(d)(1) statements is **DENIED.**

5

## C. Government's Response Moots Defendant's Request for Rule 404(b) Notice

As to Defendant's request regarding Rule 404(b) notice, the government's response, specifying four pieces of evidence, appears to satisfy this request. Furthermore, the Court notes that it has already established deadlines and directions as to the government's various disclosure responsibilities, including its disclosure of Rule 404(b) material. While the government's briefing addresses the admissibility of certain Rule 404(b) evidence, the issue of admissibility, as discussed *infra*, is not presently fully briefed before the Court; consequently, such issues may be raised again, if desired, in motions in limine.

Finally, it appears to the Court from the averments of both parties that Mr. Green has already received substantial discovery in this case. Defendant's motion does not allege that the government is failing to comply with any of its specific discovery obligations. Therefore, for all of the above reasons, Defendant's Motion for Notice of United States' Intention to Use Certain Evidence is **DENIED.**

## III. Motion for Government Agents and State and Local Enforcement Officers to Retain Rough Notes and Writings

Defendant requests an Order requiring the government, including all relevant agents and officers, to retain and preserve notes and writings that may be producible pursuant to 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 26.2, or *Brady*. Def.'s Motions, pp. 5-6, ¶¶ 20-21. The United States responds that it previously ordered its agents and officers to retain all relevant rough notes. Govt.'s Resp., p. 13. Furthermore, the government states that it has no objection to Court granting the Motion. Therefore, Defendant's Motion is **GRANTED**, and the Court hereby orders the Government to provide such notes to the Court, for an *in camera* inspection, at least 2

6

weeks prior to trial. If the Court finds information that is discoverable, it will then order such information to be produced to Defendant.

## IV. Motion to Disclose and Exclude Uncharged Misconduct Evidence

Defendant requests the disclosure and exclusion of uncharged misconduct evidence, which "may be offered pursuant to Rule 404(b) of the Federal Rules of Evidence . . . ." Def.'s Motions, p. 6, ¶¶ 22-29. The government, in its response to Defendant's aforementioned Motion for Notice of the Government's Intention to use Certain Evidence, stated that it intends to use the following evidence: "1) Mr. Green's conviction on February 19, 1985, for felonious assault; 2) Mr. Green's September 2, 1986 conviction for assault in which he assaulted a prison guard while in the custody of the Michigan Department of Corrections; 3) evidence that Mr. Green is currently incarcerated for unlawfully possessing a firearm; and, 4) on July 29, 1985, while incarcerated in Michigan, he received a misconduct for fighting/possession of a weapon and received another misconduct on June 21, 1986, for attempted theft." Govt.'s Resp., p. 4

Thus, the government answered Defendant's request for disclosure. As to exclusion, Defendant obviously was unable at the time of filing the motion to raise specific arguments as to why certain evidence should be excluded. Consequently, the Court will refrain from ruling on the admissibility of the government's stated evidence at this time, as such adjudication is premature; should Defendant wish to challenge the admissibility of any of the four items prior to trial, he may file an appropriately briefed motion in limine, in accordance with the Court's pretrial schedule. Therefore, the Defendant's Motion to Disclose and Exclude Uncharged Misconduct Evidence is **DENIED**, as the motion to disclose is mooted by the government's response, and the motion to exclude is premature, because Defendant has not yet adequately briefed the specific issues.

7

## V. Motion for Early Disclosure of Jencks Materials

Stating his anticipation that trial witnesses will have previously made written or oral statements, Defendant requests the Court to "issue an Order requiring the United States to disclos[e] any and all Jencks materials prior to trial." Def.'s Motions, p. 7.

Third Circuit precedent dictates that a district court may not compel the early disclosure of Jencks Material. *See, e.g.*, *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("The blunt command of the statute together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial."). However, federal district courts frequently encourage the government to produce Jencks material sufficiently prior to trial in order to avoid delays during trial. *See United States v. Williams*, 2008 WL 794465 (W.D. Pa. Mar. 24, 2008) (McVerry, J.) ("However, the Court strongly encourages the government to produce all Jencks Act material in sufficient time to avoid delays at trial.").

In accordance with its typical practice, the government agreed to voluntarily disclose all Jencks Act material during the week prior to trial. Therefore, Defendant's Motion is **DENIED** in that the request is mooted by the government's willingness to disclose Jencks material during the week prior to trial.[1]

---

[1]As an additional note, this Court is baffled by the frequent filing of motions for early disclosure of Jencks Material; such a requests asks this Court to order what it has no power to order. In essence, such a request asks the Court to ignore the plain language of 18 U.S.C. § 3500(a), which states, in pertinent part : ". . . no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Furthermore, Rule 16(a)(2) expressly states that it does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Given the "blunt command" of this statute, along with "unbroken precedent in the Courts of Appeal", this Court finds that Defendant's Motion for Early Disclosure of Jencks Material is frivolous and an unnecessary waste of Court resources. *See United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) While this request is not unusual, the Court directs all such movants' attention to Rule 3.1 of the ABA Model Rules of

8

## VI. Motion for Additional Discovery

Defendant makes numerous discovery requests. Def.'s Motions, pp. 7-9, ¶¶ 32-35. In response, the government asserts that it has already provided "much" of the requested material. Govt.'s Resp., p. 15. Furthermore, the government avers that it remains cognizant of its ongoing disclosure responsibilities. *Id.* The Court accepts the government's representations in this regard.

A preliminary issue raised by the government is Mr. Green's failure to comply with Local Criminal Rule 16.1(C) and(D). Pursuant to Local Rule 16.1(C), prior to making a request for additional discovery, counsel must confer with opposing counsel in an attempt to satisfy the requests without recourse to the Court. Pursuant to Local Rule 16.1(D), where an agreement cannot be reached, the requesting party may move the Court for relief, with this request containing a statement certifying compliance with Local Rule 16.1(C). The Court notes that Defendant's Motion does not comply with the cited rules; consequently, the Court could deny the Motion on that ground alone; however, with appropriate censure to Defendant's counsel for this failing, the Court nonetheless elects to briefly address Defendant's discovery requests.

As to Defendant's request for statements made by himself, any witnesses, and Michael Bickley (Def.'s Motions, ¶ 32(a)), after first noting that the government already provided Defendant's statements as required by Rule 16, the Court **DENIES** the remainder of this request, because Defendant has not sufficiently established a basis for such discovery at this stage in the

---

Professional Conduct: "Rule 3.1 Meritorious Claims and Contentions: A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established." Model Rules of Prof'l Conduct R. 3.1 (2002).

proceeding. Furthermore, the above-mentioned prohibition in Rule 16(a)(2), expressly limiting discovery of such statements except as provided in 18 U.S.C. § 3500, seems applicable to Defendant's request.

As to Defendant's request for medical and scientific reports (Def.'s Motions, ¶ 32(b)), the Court **DENIES** this request as moot, noting that the government already provided or agreed to provide all such information.

As to Defendant's request for Defendant's prior criminal record (Def.'s Motions, ¶ 32(c)), the Court **DENIES** this request as moot, noting that according to the Receipt for Local Rule 16.1 Material (Doc. No. 18), Defendant has already received this material.

As to Defendant's request for a copy of Michael Bickley's criminal record (Def.'s Motions, ¶ 32(d)), the Court **DENIES** this request, noting that such information would appear likely to fall within the scope of *Brady* material, and the Court's presently governing pretrial order specifies that *Brady* material must be disclosed on or before July 27, 2009. Consequently, if Defendant has some unspoken compelling need for this *Brady* material at this stage in the proceedings, he may file a motion requesting that the Court set an earlier deadline, with such motion stating appropriate reasons for the earlier timetable.

As to Defendant's lengthy and broad request at Def.'s Motions, ¶ 32(e), the Court **DENIES** this request, noting that the government freely offered to allow inspection of any such information.

As to Defendant's requests at Def.'s Motions, ¶¶ 32(f)-(g), 34, and 35, the Court **DENIES** these requests. As to Defendant's request for "any written record containing substance of any oral statement made by Defendant", such a record was already produced pursuant to Rule 16(a)(1)(B). Defendant's numerous other requests are similarly denied, whether for reasons of having already

10

been included in Rule 16 materials,[2] or for reasons regarding discovery schedules stated *supra* in this section.

## VII. Motion for Early Disclosure of Brady Material

Defendant sets out numerous requests in this Motion, all of which essentially seek early disclosure of exculpatory and impeachment information under *Brady*, and also additional information. Def.'s Motions, pp. 9-13, ¶¶ 36-68. While this Motion is framed as a request for earlier disclosure of *Brady* material, the Motion also appears to request materials beyond the scope of *Brady*. For instance, one request asks for the government to turn over the 5-year tax records and psychiatric records of any supposed agents, informants, unindicted coconspirators and cooperating individuals. The government responds to this motion by assuring that it has fully complied with its *Brady* obligations as to exculpatory information, and also that it recognizes its continuing responsibilities in that area. Govt.'s Resp., pp. 22-25. The government also attacks the breadth of the request, essentially arguing that under controlling law and its logical application, it cannot be expected to search high and low for immaterial information not in its possession. *Id.*

As to timing, pursuant to this Court's currently in-effect pretrial order, the government is currently directed to provide defense counsel with *Brady* impeachment material two weeks prior to the start of trial. The Court finds that given the simple nature of the issues in this trial, two weeks provides more than sufficient notice to Defendant while also not materially inconveniencing the government.

As to breadth of the request, the Court agrees with the government's assertion that

---

[2]The Court acknowledges and accepts the government's assertion of its willingness to comply with all of its discovery obligations. Should Defendant feel that a specific governmental discovery obligation is being ignored or underutilized, he is free to file a more specific motion to that effect.

boundaries must be applied to the type of information available under *Brady*. Specifically, *Brady* does not impose a duty on a prosecutor "to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Wecht*, 2007 WL 2343845 (W.D. Pa. Aug. 15, 2007) (quoting *United States v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005). The Court finds no compelling reason to analyze every individual request; instead, the Court will **deny** Defendant's requests, while granting leave to Defendant to file a more specific motion as to any still-desired request, with such motion to include clarification of the information sought, and a brief legal or fairness argument as to why such information ought to be discoverable.

Consequently, Defendant's Motion for Early Disclosure of Brady Material is **DENIED**, because the government states that it has complied and will comply with its obligations under *Brady*; and the Court has already set a schedule for the government to provide *Brady* impeachment material. Furthermore, the Court lacks sufficient information to grant Defendant's numerous and broad requests that appear to perhaps fall outside of the boundary lines of *Brady*; Defendant is granted leave to re-file specific requests, along with more-detailed supporting arguments.

## VIII. Motion To Suppress Statements and Evidence

Defendant moves the Court for suppression of evidence in the following discrete areas: 1) "all evidence as to statements made by Defendant, whether oral and/or written after Defendant's detainment and prior to and up until the Defendant was brought before a magistrate judge"; 2) "all statements ma[de] by any and all witnesses and Michael Bickley whether oral and/or written made during the course of this investigation"; and 3) all statement, whether oral, recorded or written taken from the Defendant, witnesses and/or Michael Bickley by any law enforcement officials,

12

representative of the United States Government, or anyone acting on their behalf, at any time following Defendant's initial detainment by Federal Corrections Officers while an inmate in the Federal Correctional Institution at Loretto, Pennsylvania and Defendant's subsequent arrest by federal authorities." Def.'s Motions, pp. 16-17, ¶¶ 69-74. Defendant asserts several grounds for these requests, including as follows: 1) that he was not brought before a magistrate judge without unnecessary delay as required by Rule 5 of the Federal Rules of Criminal Procedure; and 2) that any such statements were obtained in violation of his constitutional rights, with such rights including his privilege against self-incrimination, and right to assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments; and 3) that such statements were involuntary, as they made under duress and in response to false assurances. *Id.*

The United States opposes Mr. Green's requests and argues that pursuant to applicable law, the requests must be denied. Govt.'s Resp., pp. 25-29. The government first states that an appropriate procedure would be for the Court to make a factual determination whether any statement made during the relevant period was "voluntary" and hence admissible. *Id.* at 26-27. The government also argues that even if there was a violation of a timeliness requirement, the remedy is only to suppress statements made during period of delay. *Id.* The government states that the only at-issue statement occurred on 6/10/2008. *Id.* The government further argues that Mr. Green fails to raise any proper grounds or authority for the suppression of the statements of other witnesses. *Id.* at 29 Finally, the government argues that at the hearing, it would put on evidence that Mr. Green's statement did not result from duress or any assurances. *Id.*

As stated *supra*, the Court held an evidentiary hearing related to the Motion to Suppress on March 24, 2009. The Court's following findings of fact emerge from the evidence presented

13

at that hearing and other matters evident from the record.

## A. Findings of Fact

On June 10, 2008, Mr. Green, while incarcerated at the Federal Correctional Institution at Loretto, was involved in a lunchtime altercation with another inmate, Michael Bickley. Hr'g Tr., pp. 7, 10. Correctional officers, including Lieutenant Dennis Ray Brandis and Officer Miller, attempted to separate the two inmates. *Id.* at 6, 10. During this melee, the fighting inmates and the interrupting officers were in a pile, with Officer Miller on top of Mr. Bickley, and Mr. Bickley on top of Mr. Green. *Id.* at 7, 10. Following separation of the fighting inmates, with officers still attempting to secure and handcuff the inmates, Mr. Bickley apparently informed Officer Miller that Mr. Green had been trying to shank Mr. Bickley. *Id.* at 7, 16, 21. Officer Miller consequently advised the other present officers, including Lieutenant Brandis, that Mr. Green had a shank. *Id.* at 7, 21. Lieutenant Brandis then directly asked Mr. Green if he possessed a shank on his person. *Id.* at 7. Mr. Green stated "No." *Id.* Lieutenant Brandis raised this question out of concerns for his safety and the safety of other officers. *Id.* at 22.

This question-and-answer between Lieutenant Brandis and Mr. Green occurred while Lieutenant Brandis was attempting to subdue Mr. Green, who was noncompliant. *Id.* at 7, 10. Lieutenant Brandis secured Mr. Green's left arm, but noticed that Green's right arm was "trying to slide underneath his abdomen area towards his belly the whole time." *Id.* at 7-8. Lieutenant Brandis, with help from other officers, eventually secured Mr. Green's right arm, handcuffed him, and patted him down. *Id.* at 8, 11. Lieutenant Brandis found a "homemade weapon . . . tucked into [Mr. Green's] waistband of his pants." *Id.* at. 8.

This discovered item, approximately 8 ½ inches long, is a stick-like metallic object made

14

from solder-based material. *Id.* at 14; *see also* Govt. Ex. 1. On one end, black electrical tape creates a type of a handle, while the other end comes to a sharpened point. Hr'g Tr., p. 14; *see also* Govt. Ex. 1.

Following Lieutenant Brandis's discovery of the metallic object, he took Mr. Green to the special housing unit (SHU). Hr'g Tr., p. 12. Lieutenant Brandis attempted to question Mr. Green as to the fight, but Mr. Green responded: "I'm not saying anything." *Id.* at 13. Later, FBI Special Agent William Weiss approached Mr. Green to obtain a statement, and Mr. Green refused to make a statement. *Id.* at 5, 22 (fact stipulated to by parties).

## B. Conclusions of Law

The Court will organize its adjudication of Defendant's requests in terms of the grounds raised in Defendant's Motion: unnecessary delay, violation of constitutional rights, and duress or assurances.

### 1. Alleged Delay in Bringing Defendant Before Magistrate Judge is not a Basis for Suppression in this Instance

One of the bases Defendant mentions for seeking suppression of various statements is a delay in bringing Mr. Green before a magistrate judge. For the reasons that follow, this basis, given the above factual circumstances, is not a valid reason for the suppression of any statements at issue in this case.

#### i. Summary of Defendant's Presentment Rights

A defendant arrested in a criminal action has the right to prompt presentment before a judicial officer. This right extends back to the common law, and is an important protection against abuses of power by law enforcement. *See Corley v. United States*, 129 S. Ct. 1558, 1569,173 L.

15

Ed. 2d 443 (2009) (citing *County of Riverside v. Mclaughlin*, 500 U.S. 44, 60-61, 111 S. Ct. 1661 (Scalia, J., dissenting)). "Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release." *Id.*

In 1943, in *McNabb v. United States*, the Supreme Court addressed this right to prompt presentment. 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943). In *McNabb*, the Court held that where confessions are obtained in violation of the defendants' right to prompt presentment, such confessions are inadmissible. *Id.* Later explaining its holding in *McNabb*, the Court noted: "[W]e held that the plain purpose of the requirement that prisoners should promptly be taken before committing magistrates was to check resort by officers to 'secret interrogations of persons accused of a crime.'" *Upshaw v. United States*, 335 U.S. 410, 412, 69 S. Ct. 170, 93 L. Ed. 100 (1948) (quoting *McNabb*, 318 U.S. at 344).

Shortly after *McNabb*, the statutes applied by the Court in the Opinion's reasoning were superseded by Federal Rule of Criminal Procedure 5(a), which applied similar protections. The current Rule 5(a), essentially similar to the original rule, requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."

In *Mallory v. United States*, the Supreme Court affirmed the principle of *McNabb*, holding that where law enforcement delays presentment for the purposes of interrogation, such delay is "unnecessary" under Rule 5(a), and statements obtained during the period of such delay are subject

16

to an exclusionary remedy. 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed.2d 1479 (1957). This doctrine became known in the legal community as the McNabb-Mallory rule, whereby a Court would suppress any confession that was illegal due to the failure of law enforcement to promptly bring an arrestee before a judicial officer following arrest.

In April, 2009, the Supreme Court issued *Corley v. United States*, which further defined the boundaries of the McNabb-Mallory rule. 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) The issue in *Corley* was the continued effect and scope of the McNabb-Mallory doctrine, in light of 18 U.S.C. § 3501, which provides that certain confessions shall be admissible if voluntarily given. *Id.* at 1562. ("The question here is whether Congress intended 18 U.S.C. § 3501 to discard, or merely narrow, the rule in [*Mcnabb* and *Mallory*], under which an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge."). *Corley* held that Congress meant only to limit, rather than eliminate, the McNabb-Mallory doctrine. *Id.* Upon analysis of the interplay between § 3501(a), § 3501(c), and Rule 5(a), the Court explained that the following test should be applied by a district court:

> We hold that § 3501 modified *McNabb-Mallory* without supplanting it. Under the rule as revised by § 3501(c), a district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was 'reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]"). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and . . . the weight to be given [it] is left to the jury." *Ibid.* If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

*Corley v. United States*, 129 S. Ct. 1558, 1571,173 L. Ed. 2d 443 (2009)

17

### ii. Defendant's Presentment Rights Are Not Related to Any of His Supposed Statements

While this Court could continue to discuss the interesting legal aspects of *Corley*, and the McNabb-Mallory doctrine, such discussion is of little import as to this issue. Given the above-stated purposes of the McNabb-Mallory doctrine, it is obvious that exclusion would only apply where a confession was made by a defendant due to a post-arrest interrogation, occuring after an unnecessary delay, but before presentment to a Magistrate Judge.

The relevant timeline in this matter is as follows: the incident in prison occurred on June 10, 2008, the Indictment issued on August 12, 2008, an arrest warrant issued on August 13, 2008, Mr. Green was secured by the U.S. marshals on September 12, 2008, Mr. Green received his initial appearance, was arraigned, and received a detention hearing on September 15, 2008. Doc. Nos. 1 and 15.

Based upon evidence presented at the hearing, only three statements are conceivably in play as to presentment problems. The first is Mr. Green's response of "No", given in response to the June 10 query by Lieutenant Brandis as to Mr. Green's possession of a shank. The second is Mr. Green's response to Lieutenant Brandis's attempted questioning, at some point following the fighting incident. Mr. Green told Lieutenant Brandis: "I'm not saying anything." The third is Mr. Green's refusal to comment when questioned after the incident by FBI agent William Weiss.[3]

Two obvious reasons readily emerge as to why Defendant's presentment rights were not violated as to any of these three statements. First, upon information available to the Court, none of the statements were made post-arrest. Obviously, the statement during the scuffle in the prison

---

[3]The Court notes that these latter two instances, both involving Defendant's refusal to comment, hardly constitute the making of a statement; nonetheless, the Court will address the possibility for the sake of completeness.

18

was not post-arrest. Additionally, Lieutenant Brandis's and Agent Weiss's visited Mr. Green prior to his arrest. Lieutenant Brandis's visit was likely made pursuant solely to rational penal security interests. According to the record in this matter, a warrant was not issued for Mr. Green's arrest until August 13, 2008. Furthermore, Mr. Green was not taken into custody by the U.S. Marshals, on this charge, until September 12, 2008. Consequently, on these facts, the only time period during which the McNabb-Mallory doctrine would conceivably apply is from the time of Mr. Green's arrest, September 12, 2009, until his presentment before Magistrate Judge Pesto on September 15, 2009. The Court has no grounds for believing that any of the statements occurred during that time period.

Second, none of the statements was a confessions elicited through government interrogation. First, Lieutenant Brandis's question regarding Mr. Green's possession of the shank was raised pursuant to a crisis situation, and the question stemmed solely from legitimate and immediate correctional and officer safety concerns, as opposed to a post-incident focused effort of interrogation. Furthermore, the phrase "no" itself is not much of a confession. Second, when questioned in the SHU, Mr. Green did not reveal anything of substance to either Lieutenant Brandis or Agent Weiss; instead, Mr. Green merely responded to the questioning with a refusal to comment. Consequently, Mr. Green does not allege that any confessions were made by him during the time period wherein either Rule 5(a) or the McNabb-Mallory doctrine might be relevant. Consequently, this Court finds that any delay in presentment is not a basis for suppression of any statements made by the Defendant. Should additional statements exist in the nature of confessions, of which the Court is not aware, and that occurred during the relevant time period, Mr. Green may seek leave to file an additional supplemental motion, alleging, with greater particularity, the factual

19

and legal basis for suppression.

## 2. Defendant's Constitutional Rights Were Not Violated

Defendant also appears to raise the catch-all basis for suppression, that his statements were obtained in violation of his constitutional rights. Defendant alleges violations of his privilege against self-incrimination, and his right to assistance of counsel. First, and problematically, Defendant does not allege any specific factual circumstances that demonstrate that his statements were obtained in a manner that violated such rights. Furthermore, the Court did not make any factual findings that would seem to indicate any type of constitutional violation as to any statements; nonetheless, the Court will conduct a brief analysis of Defendant's bare allegations.

### i. Defendant's Fifth Amendment Rights Were Not Violated

The Fifth Amendment provides that no person "shall be compelled to be a witness against himself . . . ." U.S. CONST. amend V. The Fifth Amendment has been interpreted to mean that an individual may refuse to answer questions that may self-incriminate, and violations of this right may be the basis for a confession being inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. Ed. 2d 694, 704 (1966). The facts in this matter do not show that any incriminating testimony was compelled or taken during interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297, 307 (1980). Rather, upon an assessment of the circumstances, Mr. Green's statement of "no" was a voluntary and spontaneous statement. *See, e.g.*, *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S. Ct. 1931, 1936, 95 L. Ed. 2d 458, 468 (1987) (explaining that as to voluntary statements, Fifth Amendment privileges and exclusionary rules are not applicable). Furthermore, Mr. Green's other alleged statements, both expressions of an unwillingness to comment, were nothing more than valid invocations of his Fifth

20

Amendment privilege against self-incrimination.

## ii. Defendant's Sixth Amendment Rights Were Not Violated

The Sixth Amendment guarantees the defendant in a criminal prosecution the right to the assistance of counsel. U.S. CONST. amend VI. This right "[e]mbod[ies] 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself . . . .'" *Maine v. Moulton*, 474 US 159, 169, 106 S. Ct. 477, 483, 88 L. Ed. 2d 481, 491 (1985) (citation removed). This right applies to all critical stages of a criminal prosecution, after formal charges have been filed. *Massiah v. United States*, 377 U.S. 201, 205, 84 S. Ct. 1199, 1202, 12 L. Ed. 2d 246, 250 (1964). The right is violated where police obtain a confession from a defendant when counsel is not present, or without having first obtained a waiver of the defendant's right to have counsel present. *See Fellers v. United States*, 540 U.S. 519, 524, 124 S. Ct. 1019, 1022, 157 L. Ed. 2d 1016, 1022 (2004).

First, the facts of this case do not raise any issue of confessions. Second, Defendant's statement of "no" was made in a situation wherein the right to counsel had not attached. Apparently, Defendant, while involved in a fracas believes that he should be assigned an attorney before corrections officers attempt to break up the fight or protect themselves from potential attack; the sheer brazenness of Defendant's suggestion that his Sixth Amendment rights were violated suggests either a clerical mistake or Counsel's complete misunderstanding of Sixth Amendment jurisprudence. Furthermore, for similar, if less dramatic reasons, Defendant's latter two statements, meaning his refusals to comment, were not obtained in violation of his Sixth Amendment rights, as formal charges had not been filed in the matter. Furthermore, neither the FBI agent nor Lieutenant Brandis actually obtained any statements from Defendant other than a

21

generic refusal to comment. Consequently, even if a violation had somehow occurred, assuming a fact scenario different from the one before the Court, there are no statements to suppress.

### iii. Defendant's Statement of "No" Was Voluntary

As a condition of admissibility, the Due Process Clauses of the Fifth and Fourteenth Amendments require that confessions be voluntary. *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) ("Due Process clauses of the Fifth and Fourteenth Amendment bar the use of incriminating statements that are involuntary."). Voluntariness is assessed by the totality of the circumstances. *See Spano v. New York*, 360 U.S. 315, 323, 79 S. Ct. 1202, 1207, 3 L. Ed. 2d 1265, 1272 (1959). An example of an involuntary confession is one obtained by physical beating, as in *Brown v. Mississippi*, 297 U.S. 278, 56 S. Ct. 461, 80 L. Ed. 682 (1936). Official compulsion, typically engineered by police investigators, is necessary for a confession or incriminating statement to be involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473, 482 (1986).

Mr. Green's situation contained no such official compulsion. Instead, in assessing the totality of the circumstances, this Court finds more than sufficient evidence of voluntariness. For instance, Mr. Green did not need to answer the question presented to him. Whether Mr. Green answered the question or not, Lieutenant Brandis would still have conducted the process of restraining Mr. Green. Furthermore, the question was a mere byproduct of the properly executed restraining process of a non-compliant inmate. Furthermore, Mr. Green himself initiated, or participated in the initiation, of the events leading to the need for his person being secured by Lieutenant Brandis. This setting, of corrections officers securing a fight scene for the protection of inmates and officers, typifies inherent and necessary correctional procedures; therefore, Mr.

22

Green's statements were certainly not compelled in any fashion so as to make them involuntary.

### 3. At-Issue Statements Were Voluntary and Not Made Under Duress

Defendant states only that "Any statements obtained were made under duress and in response to false assurances, and therefore, were not voluntary." Def.'s Motions, p. 15, ¶ 74. Such conclusory language, absent support via statements alleging a factual basis, does not satisfy Defendant's initial burden to establish any basis this grounds for suppression. Furthermore, nothing in the Court's findings of fact would support any claim of suppression due to involuntariness or duress. Yes, Mr. Green was grappling with Lieutenant Brandis at the time of the statement's utterance; however, for the reasons stated above, and additional reasons that are too obvious to merit elaboration, this situation did not constitute involuntary duress. Furthermore, Defendant has not offered any evidence to suggest that any assurances were offered to him. Therefore, Defendant's contentions regarding his statements fails.

### C. Defendant's Request to Suppress the Statements of Mr. Bickley and Others at the Fight Scene Has No Merit

In addition to his own statements, Mr. Green moves the Court to suppress "statements made by any and all witnesses and Michael Bickley whether oral and/or written made during the course of this investigation." Def.'s Motions, ¶ 70. If the Court were awarding style points for breadth and boldness of requests, Defendant's motion to suppress all statements by all witnesses would certainly earn high marks. However, obliged to apply principles of law, this Court finds absolutely no basis whatsoever for this brazen and illogical request. It is perhaps unsurprising that Defendant offers no legal support whatsoever for this request, because the Court cannot even imagine the existence of any such support. The fundamental problem, of course, is that Defendant

23

has not offered any basis for standing to seek the suppression of the statements of other, independent witnesses based upon violation of their, or his, constitutional rights. Consequently, Defendant's request to suppress the statements of other must fail due to complete lack of evidentiary or legal support .

### D. Conclusion

For all of the above reasons, Defendant's Motion to Suppress is **DENIED.**

## IX. Motion to Seek Lesser Included Offense

Defendant avers that under the 18 U.S.C. § 1791(a)(2), the statutory offense charged in the Indictment, a person may be convicted of either a felony or a misdemeanor, depending upon the nature of the contraband. Def.'s Motions, pp. 17-18, ¶¶ 75-80. Specifically, Defendant argues that because the alleged contraband was under nine (9) inches, he should be charged with a "lesser included offense under 18 U.S.C. §§ 1791(b)(5) and 1791(d)(1)(B)." *Id.* Defendant further states that he should be charged with this "lesser included offense . . . in that he was in fear for his life necessitating his defense." *Id.* Defendant concludes by stating he "respectfully requests that this Honorable Court issue an Order granting this Motion to Seek a Lesser Included Offense." *Id.*

First, it is unclear to the Court what exactly Defendant is asking. In particular, it is unclear from what type of relief he seeks. Paragraph 78 perhaps provides the best clue: "Defendant believes that he should be charged with a lesser included offense . . . ." *Id.* ¶ 78. This paragraph suggests that Defendant requests the Court to somehow change the Indictment; even if it were this Court's will to do so, this Court lacks the authority or jurisdiction to make charging decisions. Rather, charging decisions fall within the discretion of the executive branch. "[T]he decision whether or not to prosecute, and what charges to file or bring generally rests entirely in [the

24

prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).

In the alternative, the Court guesses that Defendant's motion intends to request that a certain charging instruction be given to the jury at trial. If such is the case, the Court notes that it has recently adjudicated a similar request, in the matter of *United States v. Holmes*, 3:07-cr-13 (W.D. Pa. 2009) (Gibson, J.). In that case, the Court received a motion from Defendant Holmes, requesting that the jury be instructed as to the issue of a lesser included offense. Upon denying the Motion, the Court stated:

> I have reviewed cases that I was referred to by the parties, as well as any other precedent that I felt was appropriate. And I'll first note that I find the lesser included offense issue to have been one that is interesting and not clearly decided in this circuit. And I do commend both counsel on their having raised the issue and also their research in terms of what they felt applied to it. I do feel it is a close call, but I am going to deny the defendant's request for instruction regarding lesser included offense.

Transcript of Trial Proceedings at 3, *United States v. Holmes*, 3:07-cr-13 (W.D. Pa. Feb. 3, 2009) (Doc. No. 114). Consequently, consistent with its earlier assessment of this issue, Defendant's Motion is DENIED, with leave to file a motion for reconsideration on this issue, to be submitted along with the proposed jury instructions, at a time closer to trial, pursuant to the Court's Pretrial Order.

## X. Motion for Bill of Particulars

Defendant next moves the Court to order the government to provide a Bill of Particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. Def.'s Motions, pp. 18-19, ¶¶ 81-82. Defendant essentially requests more exact dates and information regarding various aspects

of this case. *Id.* The government characterizes Defendant's request as a simple and "form" attempt to acquire additional discovery. Govt.'s Resp., pp. 32.

Rule 7(f) states "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within ten days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires." Fed. R. Crim. P. 7(f). The Third Circuit explained:

> The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense. *United States v Tucker*, 262 F. Supp. 305, 308 (S.D.N.Y. 1966). A bill of particulars should fulfill this function "when the indictment itself is too vague and indefinite for such purposes." *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). *Accord, Wyatt v. United States*, 388 F.2d 395, 397 (10th Cir. 1968).

*United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971).

A motion for a bill of particulars should be granted "[o]nly where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial . . . .'" *United States. v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005); *see also United States v. Rosa*, 891 F.2d 1063 (3d Cir. 1989).

The Third Circuit admonished that a bill of particulars should not be used as a discovery device. *Id.* at 64 (explaining that a defendant is entitled neither to a wholesale discovery of the government's evidence, nor to a list of the government's prospective witnesses).

The heart of this issue is whether the indictment fails to provide factual or legal information and thereby "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F. 2d 1063, 1066 (3d Cir. 1989). This

26

determination focuses upon whether the defendant is sufficiently informed of the nature of the charges being brought against him, so as to 1) avoid surprise at trial; and 2) protect against double jeopardy because of an inadequately described offense. *See United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)

Applying the above standards, the Court cannot find any basis for granting Defendant's request. While the information requested may indeed be helpful to Defendant, such information does not appear necessary to avoid surprise at trial or protect against double jeopardy concerns. More importantly, the information requested, including, for instance, "what initiated the altercation between Defendant and inmate Michale Bickley" is not information that directly underlies the pleadings in this matter. Furthermore, Defendant strangely requests information regarding "co-conspirators." The Court is fairly certain that Defendant is not charged with a conspiracy of any type, but that he is charged with possession of contraband in a federal prison. Consequently, the Court is unable to ascertain the relevance such information would have as to the specific event underlying the matters alleged in the Indictment. In short, the requested particulars do not appear necessary to avoid prejudicial surprise, and they are certainly not necessary to protect against double jeopardy; this situation is easily distinguished from an Indictment alleging conspiracy, and a Defendant left decidedly unprepared in defending a conspiracy of uncertain scope. Consequently, Defendant's Motion is DENIED, as the requested information is better obtained, if at all, through typical discovery mechanisms.

## XI. Motion to Exclude Evidence of Prior Convictions

Defendant asks that the Court exclude "evidence, whether testimonial or documentary, relating to or concerning any prior convictions of Defendant, and directing the United States

27

Attorney to refrain from offering any such evidence before the jury and from cross-examining the

Defendant with respect to it." Def.'s Motions, p. 19.

The government has given its intent "to use Mr. Green's prior convictions to impeach his

credibility should he testify at trial as to his peaceful or non-violent nature and/or his desire to

avoid confrontation." Govt.'s Resp., p. 34. The government states that this "evidence will

establish that Mr. Green was convicted on February 19, 1985, of the offense of felonious assault

and assault with the intent [to] murder. In addition, on September 2, 1986, he was again convicted

of assault." *Id.* at 35.

Rule 609(a) states:

> (a) General rule.--For the purpose of attacking the character for
> truthfulness of a witness, (1) evidence that a witness other than an
> accused has been convicted of a crime shall be admitted, subject to
> Rule 403, if the crime was punishable by death or imprisonment in
> excess of one year under the law under which the witness was
> convicted, and evidence that an accused has been convicted of such
> a crime shall be admitted if the court determines that the probative
> value of admitting this evidence outweighs its prejudicial effect to
> the accused; and (2) evidence that any witness has been convicted
> of a crime shall be admitted regardless of the punishment, if it
> readily can be determined that establishing the elements of the
> crime required proof or admission of an act of dishonesty or false
> statement by the witness.

F.R.E. 609(a).

As the government acknowledges, under Rule 609, admission of convictions more than 10-

years-old is limited to certain circumstances. Rule 609(b) states as follows:

> (b) Time limit.
>
> Evidence of a conviction under this rule is not admissible if a
> period of more than ten years has elapsed since the date of the
> conviction or of the release of the witness from the confinement
> imposed for that conviction, whichever is the later date, unless the

28

> court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

F.R.E. 609(b).

For the two at-issue assault convictions to be admissible, the proponent must provide advance written notice of its intent to use such evidence, and the Court must decide that the probative value of the prior conviction substantially outweighs its prejudicial effect.

At this time, the Court does not agree with the government's argument and refuses to make the necessary finding for admissibility, that the probative value of these two convictions would outweigh their prejudicial effect. Logic dictates that the prejudicial effect of a past conviction is greatest when the offenses are similar; in this matter, assault bears substantial similarity to possession of weapon-like contraband in prison, especially when considered in light of how the contraband was allegedly uncovered. Consequently, the government has not met its burden for admissibility under Rule 609.

However, the Court notes that Defendant's motion to exclude evidence of prior convictions is not limited to those admissible under Rule 609. Consequently, as with his above Motion to Disclose and Exclude, Defendant's Motion to Exclude Evidence of Prior Convictions is **DENIED** as premature, with specific leave granted to re-raise the admissibility of such convictions at a later date, although preferably prior to the start of trial.

29

## XII. Motion to Inspect Contraband

Defendant Green requests a Court Order directing the government to allow Defendant's counsel to inspect the at-issue contraband. Def.'s Motions, p. 20. The Court is uncertain why this request was made to the Court, as the government, prior to the date of the filing of this motion, expressly indicated its willingness to allow inspection of the contraband. *See* Receipt for Local Rule 16.1 Material, Doc. No. 18, ¶ 4; *see also* Govt.'s Resp., p. 36. Furthermore, in a recent pretrial conference, the government reaffirmed its willingness to allow inspection of the contraband. Doc. No. 41. Consequently, Defendant's Motion is **DENIED.**

## XIII. Conclusion and Order

The Court's rulings on the Defendant's motions are set forth above and are summarily stated in the following Order. It is hereby ORDERED as follows:

1. Defendant's Motion to Dismiss the Indictment is DENIED.

2. Defendant's Motion for Notice of United States' Intention to Use Certain Evidence is DENIED.

3. Motion for Government Agents and State and Local Enforcement Officers to Retain Rough Notes and Writings is GRANTED, and the Court hereby orders the Government to provide such notes to the Court, for an *in camera* inspection, at least 2 weeks prior to trial.

4. Defendant's Motion to Disclose and Exclude Uncharged Misconduct Evidence is DENIED, in that government has already disclosed the requested material, and the request for exclusion is premature and inadequately briefed; Defendant is hereby granted leave to file a motion in limine on this issue in accordance with the time frames dictated by the Court's Pretrial Order.

5. Defendant's Motion for Early Disclosure of Jencks Material is DENIED with

30

prejudice.

      6. Motion for Additional Discovery is DENIED.

      7. Defendant's Motion for Early Disclosure of Brady Materials is DENIED.

      8. Motion To Suppress Statements and Evidence is DENIED, as more fully stated

*supra.*

      9. Defendant's Motion to Seek Lesser Included Offense is DENIED, with specific

leave granted to Defendant to file a motion for reconsideration on this issue, to be submitted along

with the proposed jury instructions, at a time closer to trial, pursuant to the Court's Pretrial Order.

      10. Defendant's Motion for Bill of Particulars is DENIED.

      11. Motion to Exclude Evidence of Prior Convictions is DENIED as premature,

with specific leave granted to re-raise the admissibility of such convictions at a later date.

      12. Motion to Inspect Contraband is DENIED.

**BY THE COURT:**

**June 1, 2009**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

31